[No. 32552.   Department Two.   August 27, 1953.]

THE STATE OF WASHINGTON, *on the Relation of Seldon B. Mower et al., Plaintiff*, v. THE SUPERIOR COURT FOR PIERCE COUNTY, *Frank Hale, Judge, Respondent.*[1]

[1]Reported in 260 P. (2d) 355.

*L. L. Thompson, Harry L. Sager,* and *James P. Healy,* for relators.

*Leo Teats,* for respondent.

DONWORTH, J.—This is an application for a writ of prohibition to prevent the superior court of Pierce county from proceeding with the trial of a certain condemnation case after having overruled relators' demurrer to the park district's petition. An order to show cause why such relief should not be granted was issued in this court. The record made in the superior court in the condemnation case is before us, and the matter has been submitted to us upon briefs and oral argument.

The petition filed in the superior court by the condemnor alleges that it is a metropolitan park district, owning and operating Wapato Park, a public park in the city of Tacoma; that the present and future needs of the park district make necessary the acquisition of certain real property owned by relators, and that the commissioners of the park district duly adopted a certain resolution (a copy being attached to the petition) authorizing its attorney to institute a condemnation proceeding for the acquisition of the real property described therein.

Relators, being respectively contract owners and record owner of several parcels of real property referred to in the petition (which, it was stated in the oral argument, they are occupying as their homes), demurred thereto upon several grounds. The two grounds relied upon in this court are:

"(1) That the Court has no jurisdiction of the person of the Defendant or of the subject matter of the action; . . .

"(2) That the Plaintiff has no legal capacity to sue; . . ."

After hearing argument, the trial court entered an order overruling the demurrer and orally advised relators' counsel that the case would proceed to trial before a jury for the purpose of determining compensation upon a certain date unless such action were prohibited by this court prior thereto. Accordingly, further proceedings in the trial court have been stayed by the issuance of our show cause order until further order of this court.

The question to be decided is whether a metropolitan park district has authority to condemn private property. Relators contend that the applicable statute (RCW 35.61.130) fails to confer such power in view of the provisions of the ninth amendment to the state constitution (Art. I, § 16), because no statutory method of procedure has been specified for carrying out its provisions. If such power is lacking, the superior court would have no jurisdiction to entertain the pending action.

The park district, in addition to its assertion of the possession of such authority, argues that prohibition will not lie because relators have a plain, speedy, and adequate remedy by appeal.

Assuming that relators have a right of appeal in this case (see *State ex rel. Northwestern Electric Co. v. Superior Court*, 27 Wn. (2d) 694, 179 P. (2d) 510), we are of the opinion that it is not a plain, speedy, and adequate remedy. In the event that relators' contention is correct, to compel them to involuntarily lose title to, and possession of, their homes to an entity that had no legal authority to pre-empt them and then to restrict their right of redress for the restoration of their homes to an appeal, would impose an undue hardship. It is to the advantage of all parties to have this court, prior to a lengthy trial, determine the vital question of the power of the metropolitan park district to condemn private property, thus avoiding undue hardship, delay, and expense.

In *State ex rel. Waterman v. Superior Court*, 127 Wash.

37, 220 Pac. 5, where the trial court was attempting to direct the forfeiture of a lease after this court had, on a prior appeal, directed a judgment for nominal damages only, a similar problem was presented. In prohibiting such action, this court said:

"The action of *Robertson v. Waterman, supra* [123 Wash. 508, 212 Pac. 1074], was purely and solely an action for damages. The question of the forfeiture of the lease or tenancy was not in issue, and the judgment directed by this court was one for nominal damages only, and when the superior court attempted by its judgment to direct the forfeiture of the lease and tenancy, it acted in excess of its authority and attempted to do that which this court did not authorize it to do; hence the judgment to that extent was a nullity. But whether so or not, the statute which we have already quoted can have no application to any other than an action in forcible entry and detainer, and the superior court was without jurisdiction to proceed thereunder.

"Some contention is made that relator has an adequate remedy by appeal, or should have sought relief by writ of review. *Since the superior court was without jurisdiction to proceed, there seems no good reason why relator should be put to the expense, trouble and delay of defending against the petition in the superior court and appealing from a final judgment*; nor would a writ of review be any more adequate to raise the question of jurisdiction than the means employed. The office of a writ of prohibition is to prohibit an inferior tribunal from proceeding in excess of its jurisdiction, which it was here attempting to do, and therefore the permanent writ will issue." (Italics ours.)

It follows that any remedy by appeal would be inadequate under the circumstances presented here, and the issuance of a writ of prohibition is proper if the trial court is threatening to act without, or in excess of, its jurisdiction.

We now must determine whether the provisions of RCW 35.61.130 confer authority upon the park district to maintain its attempted condemnation of relators' property. The material portion of this section reads as follows:

"A metropolitan park district *has the right of eminent domain, and may* purchase, acquire and *condemn lands* lying within or without the boundaries of said park district, for

public parks, parkways, boulevards, aviation landings and playgrounds, and *may condemn* such lands to widen, alter and extend streets, avenues, boulevards, parkways, aviation landings and playgrounds, to enlarge and extend existing parks, and to acquire lands for the establishment of new parks, boulevards, parkways, aviation landings and playgrounds. The board of park commissioners may pass orders *providing for all condemnations which it may desire to institute within its authority, and to bring actions in the proper courts for the condemnation of lands,* to employ counsel, and to regulate, manage and control the parks, parkways, boulevards, streets, avenues, aviation landings and playgrounds under its control, and to provide for park policemen, for a secretary of the board of park commissioners and for all necessary employees, to fix their salaries and duties. . . . " (Italics ours.)

It will be noted that no method of procedure is prescribed for the exercise of the power of eminent domain by park districts. The italicized portions of the statute, above quoted, contain the only references to that subject in the entire act (RCW 35.61.010 to 35.61.300, inc.).

No provision is made for the filing of any petition, no description of the contents thereof is given, nor is there any designation of the court in which the property owner shall appear and in which his just compensation shall be determined. The contents of the notice or summons and the manner of service thereof upon the property owners and other interested parties, are vital matters which are left to the imagination of one searching for procedural direction. The time within which a party defendant may appear after service of the notice or summons is not prescribed. These omitted provisions are not merely matters of form; they are essential to due process before private property may be taken for public use.

In contrast with this total lack of statutory procedure for the exercise of the power of eminent domain by a metropolitan park district, the complete procedural provisions which the legislature has provided in each instance where the power of eminent domain has been delegated to other municipal, or quasi-municipal, corporations can be found as follows:

| | |
|---|---|
| Procedure for counties | RCW 8.08.010 *et seq.* [*cf.* Rem. Supp. 1949, § 3991-6 *et seq.,* and Rem. Rev. Stat., § 901 *et seq.*] |
| Procedure for cities and towns | RCW 8.12.010 *et seq.* [*cf.* Rem. Rev. Stat., § 9215 *et seq.*; § 9272; § 9276 and § 9277] |
| Procedure for school districts | RCW 8.16.010 *et seq.* [*cf.* Rem. Rev. Stat., § 906 *et seq.*] |
| Procedure for flood control districts | RCW 86.08.320 [*cf.* Rem. Rev. Stat. (Sup.), §§ 9663E-69 and 9663E-70] |
| Procedure for hospital districts | RCW 70.44.060 [*cf.* Rem. Supp. 1949, § 6090-35] |
| Procedure for public utility districts | RCW 54.16.020 [*cf.* Rem. Supp. 1945, § 11610(b)] |
| Procedure for port districts | RCW 53.08.010 [*cf.* Rem. Supp. 1943, § 9692] |

In addition, where the state itself exercises this power, the procedure is found in RCW 8.04.010 to 8.04.180. In the case of private corporations authorized by law to exercise such power, RCW 8.20.010 to 8.20.170 prescribes the procedure. Where a land owner is entitled to acquire a "private way of necessity" over the land of another person, he must follow the procedure provided for private corporations. RCW 8.24.030 [*cf.* Rem. Rev. Stat. (Sup.), § 936-2]. Other examples might be cited.

The right to exercise the power of eminent domain is limited by the following portion of the ninth amendment to the state constitution (Art. I, § 16):

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, *which compensation shall be ascertained by a jury,* unless a jury be waived, as in other civil cases in courts of record, *in the manner prescribed by law. . . .*" (Italics ours.)

The words "in the manner prescribed by law" mean that the legislature must provide the procedure which an entity,

to which the power of eminent domain has been delegated, must follow before it may take or damage private property for public use without the owner's consent.

There have been many decisions of this court relating to the exercise of the power of eminent domain and construing this constitutional provision. It would unduly extend this opinion to review them in detail, and we think it necessary, in deciding the problem presented in this case, to refer to only a few of our cases which are cited in the briefs of counsel.

Relators, in arguing that a legislative provision as to procedure is essential to the exercise of this power, refer to *Tacoma v. State,* 4 Wash. 64, 29 Pac. 847, where we said:

"But the exercise of the power of eminent domain is so high and peculiar a thing that nothing less than an act of the legislature of a state can support it, and that act must not only confer the power, but prescribe the method by which it is to be done."

In *Long v. Billings,* 7 Wash. 267, 34 Pac. 936, another pertinent quotation is noted by relators:

"Before any such right can arise, the legislature must define what are to be 'private ways of necessity,' authorize persons to apply for them, and prescribe the method by which the necessary land is to be taken."

In *State ex rel. Postal Telegraph Cable Co. v. Superior Court,* 64 Wash. 189, 116 Pac. 855, involving the construction of a statute relating to the power of the court in an eminent domain proceeding to determine the question of necessity for the enterprise, it was said:

"Statutes of eminent domain being in derogation of the common right must be strictly construed, both as to the extent of the power and as to the manner of its exercise. (Citing cases.)"

No case has been called to our attention directly holding that the delegation of the power of eminent domain to a municipal corporation without any provision for a hearing before a court or other tribunal, is self-executing.

In support of its contention that RCW 35.61.130 is ade-

quate to authorize the proceeding instituted by it in the superior court, the park district relies on *State ex rel. Jones v. Superior Court,* 44 Wash. 476, 87 Pac. 521; *Redmond v. Perrigo,* 84 Wash. 407, 146 Pac. 838; and *State ex rel. Oregon-Washington Water Service Co. v. Hoquiam,* 155 Wash. 678, 286 Pac. 286.

These three cases were all based upon chapter 62, Laws of 1893, p. 135, which provided that all municipal corporations (except cities of the first class) were authorized to exercise the right of eminent domain *in the manner provided in chapter 9, Laws of 1890,* relating to private corporations. Chapter 62 of the Laws of 1893, p. 135, was repealed by chapter 29, Laws of 1925, Ex. Ses., p. 18, and neither that act nor any statute of similar import has been in effect at any time since 1925.

The facts of the *Redmond* case must be analyzed, because the language of the opinion to which the park district calls particular attention appears, when taken out of its context, to support its position in the present case. The language referred to states:

"But the appellants contend that, while § 8005 gave the right of condemnation to such towns of the fourth class under 1,500 inhabitants, it did not give a method of condemnation, and that the old law, § 7768, is the only law that provides the method of condemnation. In other words, that while the respondent has the power to condemn, it must go empty-handed away because there is no method provided; that the only method provided for it is to condemn within its own limits. That certainly is not the law. Where the power is given, a method will be accorded."

The last sentence of the quotation can hardly be said to mean that, where no legislative procedure whatever has been provided, a court will make up such procedure out of whole cloth. While the court refers to code sections in the old Rem. & Bal. Code, the holding in the *Redmond* case is that, although the condemnation by a municipality of any size for the purpose of supplying water to its inhabitants was authorized by the municipal utilities act (then Rem. & Bal. Code, § 8005), the necessary procedure was prescribed in chapter 62, Laws of 1893 (then Rem. & Bal. Code,

§ 7767). Immediately following the foregoing quotation, the decision continued:

"The respondent proceeded under the procedure for the condemnation of land provided in the general condemnation act, Rem. & Bal. Code, §§ 921, 936 (P. C. 171, §§ 173, 281). Section 7767, Rem. & Bal. Code, provides that such towns may use said procedure. The method pursued was the proper procedure for the respondent. *State ex rel. Jones v. Superior Court,* 44 Wash. 476, 87 Pac. 521."

The repeal of chapter 62, Laws of 1893, in 1925, indicated a legislative purpose to have a special procedural act applicable to each type of entity which had authority to exercise the right of eminent domain. The three last cited decisions of this court (upon which the park district relies) are not applicable to our present problem, because they involved a general procedural statute which was repealed many years ago.

We can find no method of procedure stated in RCW 35.61.130 either directly or by implication or by reference to other acts having a similar purpose. The taking or damaging of private property for public use is restricted by Art. I, § 16, of the state constitution. It was the intention of the people in adopting that constitutional provision to limit the exercise of the right of eminent domain to those cases where the legislature had, or should in the future, prescribe by law the manner in which the property owner's just compensation could be ascertained in courts of record.

Since the legislature has failed to make such provision in relation to metropolitan park districts, it follows that the condemnor has no authority to condemn relators' property, and consequently the superior court for Pierce county has no jurisdiction of the subject matter of the action in cause No. 117006; and it is, therefore, hereby prohibited and restrained from proceeding further therein.

The peremptory writ will issue as prayed for by relators.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.